IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COREY LEE DOVE, <br><br> Plaintiff, <br><br> v. <br><br> ASSISTANT WARDEN ALLEN GANG, <br><br> Defendant. | Civil Action No.:  DKC-20-1145 |

**MEMORANDUM OPINION**

Plaintiff Corey Lee Dove filed a complaint some weeks ago concerning the measures being taken to address the COVID-19 health crisis at Jessup Correctional Institution ("JCI").  Essentially, he asserts that there are not enough precautions in place at JCI to address the potential spread of the COVID-19 virus among the inmate population.  ECF No. 1.  Without issuing service of process, this court directed counsel for the DOC to provide information about the measures being taken.  ECF No. 3.  Following the DOC's response, both addressing the pandemic and indicating that Mr. Dove had failed to exhaust administrative remedies prior to filing this complaint and was therefore unlikely to prevail on his claim, this court directed Mr. Dove to explain why he did not exhaust administrative remedies first.  ECF Nos. 8 and 9.  He provided a response on June 8, 2020.  ECF No. 10.  Mr. Dove filed correspondence on June 22, 2020, indicating he had tested positive for COVID-19 (ECF No. 13) and, on the same day, counsel for the Division of Correction ("DOC") filed a reply to Mr. Dove's response (ECF No. 14).  The court received additional correspondence from Mr. Dove on July 13, 2020 and July 16, 2020.  ECF Nos. 16 and 17.

For the reasons stated below, the complaint will be dismissed without prejudice for failing to exhaust administrative remedies.  His motion to proceed *in forma pauperis* will be granted.

Response to the Pandemic

The response by prison officials at JCI to COVID-19 began with an emergency directive issued by the Department of Public Safety and Correctional Services ("DPSCS") on March 31, 2020.  The directive required social distancing and limited inmate groups to ten or less.  Officials at JCI began implementing the directive on the day it was issued, posting social distancing signs and markers.  ECF No. 8-1 at 2, ¶7 (Declaration of Warden Gang).  Facemasks for inmates were also required; Mr. Dove signed for a facemask and sneeze guard on April 3, 2020.  *Id*.  Warden Gang issued a Memorandum on April 21, 2020, stating that any inmate found not wearing personal protective equipment ("PPE") would receive a Notice of Inmate Rule Violation.  *Id*. at 22.

According to statements provided by two correctional officers, Mr. Dove was seen on one occasion wearing his facemask around his neck.  ECF No. 14-6 at 3, ¶8 (Declaration of Corp. Garnett); ECF No. 14-7 at 2, ¶8 (Declaration of Sgt. Uzoukwu).  Both officers aver that they did not issue an infraction for Mr. Dove, opting instead to simply remind him to wear it correctly.  *Id*.  Mr. Dove relies on the absence of a Notice of Inmate Rule Violation for improperly wearing his mask as evidence that it never occurred.  ECF No. 16 at 7.

In response to Mr. Dove's allegations that far more than 10 inmates were being escorted to "pill call" thus violating the policy issued regarding social distancing, Warden Gang states "that on June 19, 2020, the number of inmates at JCI who were escorted to Medical for pill call was as follows: 49 in the morning; 2 in the afternoon; and 53 in the evening."  ECF No. 14-2 at 1, ¶ 3. Warden Gang states these numbers have been consistent since March 31, 2020.  Warden Gang does not indicate how many inmates were taken to Medical at the same time, nor is there any documentation to support a finding that ten or fewer inmates are taken to Medical for pill call on a regular basis.

2

Audits were conducted on May 6 and 10, 2020 for COVID-19 compliance at JCI. ECF No. 14-2 at 2, ¶ 4, *see also* 9-13 (Audit report). The reports indicate that all required measures are in place. *Id*. at 9-13. The May 10, 2020 report indicates that one member of the dietary staff was seen not wearing a face shield while outside on the compound. *Id*. at 11. The notation indicates the situation was immediately addressed by "leadership." *Id*. In addition, the auditor noted that "Warden Gang was very proactive on audit, placing additional signage, implementing corrective actions immediately." *Id*. at 13. The May 10, 2020 audit was conducted by Christine Henson, RN (Occupational Health RN); Ieshia Pressley (Environmental Compliance and Safety Officer); David Ramon (Internal Investigation Division (IID) Detective); Diane Maskell, RN (Clinical Inmate Health RN); and Warden Gang (Designee for DOC audits). *Id*. at 11.

Mr. Dove maintains that surveillance video taken inside the prison should be preserved as evidence that supports his claims. He asks this court to ensure the preservation of all video surveillance taken inside JCI, particularly depicting the areas where pill call is conducted, presumably from March 31, 2020 to the present. ECF No. 16 at 1. He maintains that the video will show an "array of violations and . . . the lack of ANY real system put in place being followed by staff and inmates." *Id*. at 2. In his June 22, 2020 correspondence, Mr. Dove states that he tested positive for COVID-19. ECF No. 13. Mr. Dove points out that the only way he could have been exposed to the virus is for it to be brought into the prison by a correctional officer. He states that the assurances that were made that he had not been exposed to anyone with the virus are now demonstrably false and he voices concern over how this infection might affect his life-long health. *Id*.

Standards for Injunctive Relief and Eighth Amendment Claim

An "injunction is drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010), *see also SAS Institute, Inc. v. World Programming Lmtd*, 874 F.3d 370, 385 (4th Cir. 2017) (satisfying four-prong test is "a high bar, as it should be."). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994). It is the first requirement – a likelihood of success on the merits – that counsel for the DOC asserts Mr. Dove cannot satisfy because all conceivable measures to ensure inmate safety for COVID-19 infection have been put into place at JCI and Mr. Dove has not exhausted administrative remedies.

In order to bring an Eighth Amendment claim in this context, an inmate must show that the authorities have been deliberately indifferent to serious medical needs. Such a claim has two prongs, objective and subjective. Objectively the deprivation alleged must be serious. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "To be 'sufficiently serious,' the deprivation must be 'extreme' – meaning that it poses a 'serious or significant physical or emotional injury resulting

from the challenged conditions,' or 'a substantial risk of serious harm resulting from ... exposure to the challenged conditions.'" *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) quoting *Scinto*, 841 F.3d at 225). The subjective prong requires evidence that prison officials acted with deliberate indifference. "To prove deliberate indifference, [plaintiff] must show that 'the official knew of and disregarded an excessive risk to inmate health or safety." *Scinto* 841 F.3d at 225.

Analysis

While Mr. Dove may be able to satisfy the first objective prong that COVID-19 poses significant health risks, he has not shown likelihood of prevailing on the subjective prong. Prison authorities are aware of the risks and are taking measures to ameliorate the conditions. Safeguards such as the ones in place at JCI have been upheld as a reasonable response to the COVID-19 threat. In *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020), the Sixth Circuit characterized the risk posed by the COVID-19 virus as "a substantial risk of serious harm leading to pneumonia, respiratory failure, or death" that persists "despite the [Federal Bureau of Prisons' ("BOP")] efforts." The *Wilson* court, however, reversed the lower court's grant of preliminary injunctive relief because the safeguards in place that included: screening inmates, staff, and visitors for symptoms; isolating and quarantining inmates exposed to the virus; implementing limitations on movements into and within the facility; testing of inmates and staff; mandating extensive cleaning efforts; providing access to cleaning supplies; educating inmates and staff about the virus; and providing PPE to both staff and inmates, constituted evidence that prison officials were not deliberately indifferent to the risk posed by COVID-19. *Id*. at 841. "[W]hile the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted,' the BOP has 'responded reasonably to the risk' and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights." *Wilson*, 961 F.3d at 841, quoting *Farmer v. Brennan*, 511 U.S. 825, 844 ((1994).

The federal prison at issue in *Wilson* had fifty-nine inmates and forty-six staff members who tested positive for the virus and six inmates had died from complications as of April 22, 2020. *Wilson*, 961 F.3d at 840. Nevertheless, the court found that the BOP Defendants were not deliberately indifferent to the risks posed by COVID-19 due to the measures taken to stop the spread of the virus. In light of the safeguards in place at JCI, which represent a reasonable response to the COVID-19 threat, Mr. Dove is unlikely to prevail on his Eighth Amendment claim making injunctive relief unavailable. The protective measures in place at JCI are extensive and comply with measures known to decrease the dangers of viral spread through the prison. "Neither the resultant harm of increasing infections nor the impossibility of achieving six-foot social distancing in a jail environment establishes that the defendants acted with 'subjective recklessness as used in the criminal law.'" *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) quoting *Farmer*, 511 U.S. at 839–40.

This court has found measures to be lacking where such protocols are not in place despite the current scientific and medical guidelines well-publicized by the Centers for Disease Control ("CDC") and other federal and state agencies charged with educating and protecting the public. *See Seth v. McDonough*, __ F.Supp.3d __ , 2020 WL 2571168, * 2–4 (D. Md. May 21, 2020) (detailing March 23, 2020 CDC guidelines for officials operating detention facilities and finding that undertesting of inmate population coupled with the absence of contact tracing or quarantining of symptomatic or exposed inmates, and the absence of appropriate medical care for symptomatic inmates warranted injunctive relief). This court's intervention is unwarranted where protocols are in place and inspections have verified that safeguards are being observed. *See Seth*, 2020 WL 2571168 at *6-7 (detailing report of Dr. Franco-Paredes' inspection of Prince George's County

6

Detention Center and finding, among other things, that "certain staff were – and still are – ill equipped to handle the outbreak.").

## Exhaustion of Administrative Remedies

To the extent that correctional officers are not observing protocols put into place to protect the inmate population, such conduct must first be addressed through the administrative remedy process before filing suit. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (plain language of 28 U.S.C. § 1997e(a) makes administrative exhaustion a pre-condition to filing suit). The exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Mr. Dove's response to this court's Order (ECF No. 10), dated May 30, 2020, indicates that he did not wait to exhaust administrative remedies because the circumstances at JCI are life-threatening. He alleges that unnamed correctional officers at JCI are ignoring social distancing protocols and have kept for their own use personal protective equipment ("PPE") meant for distribution to inmates. He claims that "this facility just started testing the inmate population" revealing that there are a lot more cases of COVID-19 than previously believed. ECF No. 10 at 4. According to Mr. Dove, "this facility didn't act fast enough and really its this jail's fault . . . COVID 19 came in this facility due to the carelessness of these [correctional officers] and them not taking this serious!" *Id*. Beneath his statement that the assertions made by Warden Gang in the context of this case were false, Mr. Dove includes signatures from nineteen JCI inmates. Specifically, Mr. Dove states that the claim that in March safeguards for the inmate population, including PPE and cleaning supplies, were put into place is false because "most didn't start until May . . . when it was to[o] late!" ECF No. 10 at 5.

Warden Gang's May 18, 2020 response to Mr. Dove's administrative remedy procedure complaint ("ARP"), which was dismissed as without merit, indicates that "[t]here is no substantial evidence that JCI did not properly prepare for the spreading of COVID-19 inside of the facility." ECF No. 14-2 at 3.

Warden Gang further states that "JCI in fact started COVID-19 preventive cleaning 03/27/2020 and the SI Restoration team has been coming and deep cleaning the facility since." *Id*. During the investigation of his ARP, Mr. Dove admitted he was issued a facemask. *Id*. Mr. Dove does not deny that he had not received a response from Warden Gang to his ARP prior to filing the instant complaint, but maintains that he did not pursue administrative remedies before filing because he felt his life was endangered by the practices in place at JCI and because the ARP forms

8

were not readily available. ECF No. 10 at 3. He states that the appeal form is not available, the ARP process is being hindered by officers at JCI, and the only reason he was able to file an ARP with the Warden is that he had ARP forms in his possession. *Id.* According to JCI officials and the declarations provided in response to Mr. Dove's complaint, ARP forms are "available to inmates in Housing Unit C upon request." ECF No. 14-6 at 2, ¶9; ECF No. 14-7 at 2, ¶9.

Mr. Dove does not dispute that he filed this complaint before he ever received Warden Gang's response to his ARP. A claim that administrative remedies are unavailable must be supported by some indication that the process operates as a simple dead end with correctional staff unable or consistently unwilling to provide any relief; or that the administrative scheme is so confusing or complicated it is incapable of use; or that correctional staff thwart the use of administrative remedies through threats, misrepresentation, or intimidation. *See Ross v. Blake*, _ U.S. _, 136 S.Ct. 1850, 1859-60 (2016). Here, Mr. Dove began the administrative process, but simply abandoned it in favor of filing the instant complaint.

A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). An inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "[P]laintiff[] could show

a substantial likelihood of success on the merits only if the defendants were unlikely to demonstrate a lack of PLRA exhaustion." *Swain*, 961 F.3d at 1292 citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (explaining that "the burdens at the preliminary injunction stage track the burdens at trial").  Mr. Dove filed this lawsuit without availing himself of the administrative remedy procedure, therefore the claim is unexhausted and must be dismissed without prejudice.

Accordingly, injunctive relief is denied and the complaint will be dismissed without prejudice for failing to exhaust administrative remedies prior to instituting this lawsuit.  A separate Order follows.


 July 24, 2020                                             /s/
Date                                    DEBORAH K. CHASANOW
                                        United States District Judge